STATE of Minnesota by its Attorney
General, Mike HATCH,
Respondent,

v.

ALLINA HEALTH SYSTEM,
Defendant,

Board of Medica Health
Plans, Appellant.

No. A03–1274.

Court of Appeals of Minnesota.

May 18, 2004.

Mike Hatch, Attorney General, Lori R. Swanson, Solicitor General, St. Paul, MN, for respondent.

Marianne D. Short, Dorsey & Whitney LLP, Minneapolis, MN, for appellant.

Kay Nord Hunt, Diane M. Odeen, Lommen, Nelson, Cole & Stageberg, P.A., Min-

neapolis, MN, for amicus curiae Minnesota Council of Nonprofits.

Considered and decided by TOUSSAINT, Chief Judge; ANDERSON, Judge; and HUSPENI, Judge.*

## OPINION

G. BARRY ANDERSON, Judge.

The state brought this action against Allina Health System seeking solely to compel disclosure of certain documents. The state and Medica, formerly a subsidiary of Allina, agreed to an order appointing eight identified individuals as administrators of Medica. After nearly two years under this arrangement, Medica moved to dismiss the original action arguing, inter alia, that the goals of the litigation had been achieved. The district court denied this motion and granted the state affirmative relief, including authorizing the Attorney General to "rehabilitate" Medica, declaring the elections of some board members void, ordering the administrators to remain in their positions, and authorizing the state to appoint additional administrators. Because Medica was not given adequate notice of the requested relief and thus did not have an opportunity to be heard regarding the proposed relief, we reverse.

## FACTS

The appellant in this proceeding is the board of directors of Medica Health Plans (Medica); the respondent is the State of Minnesota. On January 18, 2000, the United States Department of Health and Human Services, Office of the Inspector General (HHS IG), issued an audit report detailing questionable administrative costs

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

for nine health-care management organizations, including Medica, which was then a subsidiary of Allina Health System (Allina). Allina and Medica are both non-profit corporations organized under chapter 317A of the Minnesota Statutes.

The Minnesota Attorney General began an investigation of Allina, but Allina provided the Attorney General only some of the information and documents demanded. As a result, respondent filed a complaint in district court alleging that Allina had failed to produce all of the demanded documents and requesting an order: (1) declaring Allina in violation of Minn.Stat. § 309.54 (2000) for refusing to produce the documents, (2) ordering Allina to produce the documents, (3) granting respondent attorneys' fees, investigative costs, and costs and disbursements, (4) appointing a referee to supervise the production of the information and documents, (5) ordering Allina to pay for respondent's accountants, and (6) "[g]ranting such further relief as the Court deems necessary." The complaint sought no other relief and has never been amended.

On August 2, 2001, a consent order between Allina and respondent was entered in Hennepin County District Court that provided for the separation of Allina-affiliated organizations financing health care from Allina-affiliated organizations delivering health care. The consent order required an independent board of directors and noted that the then-current board of Medica had resigned and that persons qualified to act as directors for Medica were hesitant to do so because of an ongoing investigation by the U.S. Attorney's Office. Consequently, the consent order appointed eight individuals as directors and special administrators of Medica pursuant to chapter 309 of the Minnesota Statutes.

The special administrators were ordered "to adopt Restated Bylaws and Articles of Incorporation necessary to effect the reorganization," of Medica but did not otherwise identify the duties of the special administrators. The president and chief financial officer were ordered to enter into indemnification agreements with each of the newly appointed Medica directors.

On January 10, 2002, Medica and Allina entered into a plan separating the two organizations. On April 30, 2002, Medica, with the approval of the Minnesota Department of Health, adopted new articles of incorporation and bylaws.

In June 2002, elections to Medica's board were held and four of the special administrators were elected as member-directors. The remaining special administrators were elected as non-member directors, along with others who had never served as special administrators. The chair and vice chair of the newly appointed board were both special administrators.

On February 19, 2003, respondent moved to dismiss Allina as a party to this litigation and to dismiss three of Medica's special administrators but specifically did not terminate the proceedings as related to Medica. The district court granted this motion before receiving a response from Medica, but vacated the order on February 27, 2003, because Medica objected to it. The parties then engaged in fruitless negotiations.

On April 25, 2003, Medica moved to dismiss for lack of subject matter jurisdiction or for summary judgment. In response, respondent argued, inter alia, that the appointments of the special administrators continued until Medica had been successfully rehabilitated; respondent also argued that the appointments were not to terminate until the Attorney General petitioned the district court for dismissal. Respondent attacked the performance of

the special administrators, essentially accusing the special administrators of failing to perform their duties and of unethical behavior, and criticized Medica's business practices. Respondent also argued "that factual disputes would prevent" a grant of summary judgment. Respondent made no motions.

In an order filed August 14, 2003, the district court denied Medica's motion. The district court also (1) ruled that the Attorney General "possesses statutory supervisory authority over Medica's 'rehabilitation' until this matter is dismissed;" (2) declared the board elections null and void, ordered the special administrators to remain in that capacity and as non-elected board members, and ruled the special administrators could only seek election to the board of directors once they are dismissed as special administrators; (3) authorized the Attorney General to appoint additional special administrators to serve as non-elected board members so that the special administrators controlled the Medica board; and (4) ordered the special administrators to meet with representatives of the Attorney General and to issue regular reports to the court.

In the memorandum accompanying its order, the district court concluded that the present action is the same action originally commenced against Allina and that, because the district court initially had jurisdiction over Medica, it retains jurisdiction over Medica, despite the separation from Allina. Regarding the appointment of the special administrators, the district court noted, "There is significant dispute between the parties as to what the [s]pecial [a]dministrators were charged with accomplishing...." The district court concluded that, because there was no language stating when the appointments terminated, the unambiguous language of the order meant that the appointments did not terminate.

The district court found that, even if the language of the consent order was ambiguous, it was "simply not plausible" to believe that the Attorney General would enter into a consent order for only a limited purpose and that the purpose of the consent order, instead, "was to address the systemic dysfunction at Medica." The district court relied on affidavits from the Attorney General and found, "It is not credible" that most of the special administrators "had an entirely different understanding of the original court order" from the Attorney General. The district court cited its broad equitable powers under Minn.Stat. § 309.57, subd. 1, Minn.Stat. § 317A.751, subd. 5(5), and Minn.Stat. § 8.31, subd. 3, as authority to appoint special administrators without a finding of illegality. The district court concluded that the directors' duty of loyalty to Medica did not render the original consent order invalid because the special administrators were subject to the Code of Judicial Conduct, characterizing them as court personnel similar to receivers. The district court also stated that the lack of an explicit retention of jurisdiction in the consent order did not deprive the district court of jurisdiction.

Regarding the Attorney General, the district court concluded that the Attorney General has the power "to seek oversight of Medica's rehabilitation via court appointment of the [s]pecial [a]dministrators." Regarding the elections, despite contradictory evidence, the district court stated, "The court believes, quite frankly, that the A[ttorney] G[eneral] should have [known], but did not know of or did not realize the import of, the election of the [s]pecial [a]dministrators to Medica's board," and therefore the Attorney General's challenge to the elections was not barred by laches. This appeal followed.

A special term panel of this court concluded that the district court's decision is appealable but deferred resolution of appellant's standing to challenge the district court's order and whether to extend review to non-jurisdictional issues to this panel.

## ISSUES

I.  Does the district court have subject matter jurisdiction over this case?

II.  Does appellant have standing?

III.  Which issues are reviewable?

IV.  Did appellant have notice of respondent's claims?

V.  Did the district court improperly resolve disputed facts?

## ANALYSIS

### I.  Subject matter jurisdiction

■■■ The motion before the district court challenged the district court's subject matter jurisdiction over this case. Respondent instituted this suit to compel Allina to produce documents in compliance with chapter 309 of the Minnesota Statutes. Subject matter jurisdiction may be raised at any point, either by a party or sua sponte. Minn. R. Civ. P. 12.08(c). Questions of subject matter jurisdiction are reviewed de novo. *Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn.2002). Minnesota Statute section 309.57 expressly states that the district courts have "jurisdiction to restrain, enjoin, and redress violations of sections 309.50 to 309.61." Minn. Stat. § 309.57, subd. 1 (2004).[1]

Here, respondent pleaded a violation of and requested relief for a violation of

Minnesota Statute section 309.54. The district court explicitly has jurisdiction to redress violations of this section. *Id.* Thus, the district court did not err in concluding that it had subject matter jurisdiction.

### II.  Standing

■■■ As a threshold matter, respondent argues that, because the special administrators were appointed by the district court, appellant lacks standing. A party's standing may be challenged at any time. *Cochrane v. Tudor Oaks Condo. Project*, 529 N.W.2d 429, 433 (Minn.App.1995), *review denied* (Minn. May 31, 1995). "Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 493 (Minn.1996). Standing is an amorphous concept and requires a potential party to "allege injury in fact, or otherwise have a sufficient stake in the outcome, to have a court decide the merits of a dispute." *Cochrane*, 529 N.W.2d at 433. The purpose "of the standing requirement is to ensure that issues before the courts will be 'vigorously and adequately presented.'" *Philip Morris*, 551 N.W.2d at 493 (quoting *Channel 10, Inc. v. Indep. Sch. Dist. No. 709*, 298 Minn. 306, 314, 215 N.W.2d 814, 821 (Minn.1974)).

Respondent argues that it is the former special administrators, rather than the board of directors of Medica, that seeks to appeal. Further, respondent argues, and the district court concluded, that special administrators are analogous to receivers. Because receivers have no standing to contest their appointments, respondent argues that the special administrators, and thus

---

**1.** The statute in effect in 2001, when the case was instituted, and in 2003, when the district court issued its order, is the same statutes as is currently in effect. Minn.Stat. § 309.57 (2000); Minn.Stat. § 309.57 (2002); Minn. Stat. § 309.57 (2004). Accordingly, we refer to the current version of the statute in this opinion.

appellant, lack standing. *See Twin Cities Nat. Bank v. Anderson Co.*, 156 Minn. 502, 504, 195 N.W. 273, 274 (1923) (stating that receivers have no standing to contest their appointments).

We conclude that appellant has standing. In the original consent decree and the order on appeal, the special administrators were also appointed directors of Medica, and, as the board of directors, they have a duty to serve Medica's best interests. Minn.Stat. § 317A.251, subd. 1 (2004). The district court order gives supervisory authority of the board and Medica to respondent, voids the election of certain board members, and affects the board's ability to govern Medica. Thus, the board of directors of Medica has arguably been injured by the district court's order and has a sufficient stake in the resolution of the issues presented by this appeal to insure that those issues are adequately presented.[2]

*III. Reviewability of issues*

■ This court, by special term order, held that parts of the district court's order not dealing directly with the issue of the district court's jurisdiction, were not appealable directly under Minn. R. Civ.App. P. 103.03(b) or (e), but deferred a decision on whether to review those issues under Minn. R. Civ.App. P. 103.04 (permitting this court to review any matter "as the interest of justice may require"). Appellant argues all issues should be reviewed because the district court's order has the effect of granting an injunction and a final judgment; respondent disputes appellant's

argument, claiming that justice does not require such a review.

We conclude that, under rule 103.04, review of all properly presented issues in the interests of justice is appropriate. Appellant correctly notes that the district court order compelling the board membership and the actions to be taken by the Medica board of directors determines the result here. Medica will be subject to supervisory authority by respondent, and, if respondent's position is adopted, appellant is deprived of an opportunity to determine whether such relief was appropriate and, not incidentally, is also deprived of an opportunity for a meaningful appeal of the district court action. The district court was quite clear that it will not rule again concerning elections, control of Medica, or any other issue regarding the relief granted in the district court order until the special administrators are relieved of their duties. An appeal by appellant at that juncture is meaningless. Given the importance of the issues presented and the probable impossibility of future appeal, we will review the issues raised by the appellant.

*IV. Notice*

■ Appellant argues that it did not receive notice of relief to be sought by respondent, and respondent argues that absence of notice was not a procedural defect that deprived appellant of its due process rights because appellant was not entitled to a trial.

■■ "The primary function of notice pleading is to give the adverse party fair

---

**2.** Respondent's assertion that the special administrators serve only the district court is not supported by correspondence from the Attorney General. In letters to the special administrators dated July 31, 2001, the Attorney General acknowledged that the administrators were agents of the Attorney General and of the district court. Additional correspondence from the Attorney General to the special administrators identifies the Attorney General, not the district court, as the client of the special administrators. Thus, the contention that the special administrators had only "receiver" status, and therefore no standing, is not supported by the record.

notice of the theory on which the claim is based." *Pullar v. Indep. Sch. Dist. No. 701*, 582 N.W.2d 273, 276 (Minn.App.1998). Therefore, pleadings should be liberally construed in favor of the pleader. *Basich v. Bd. of Pensions of Evangelical Lutheran Church in Am.*, 493 N.W.2d 293, 295 (Minn.App.1992). A party is bound by the pleadings if that party does not amend, unless an issue is litigated by consent. *Roberge v. Cambridge Coop. Creamery Co.*, 243 Minn. 230, 233–34, 67 N.W.2d 400, 403 (1954).

In *Roberge*, the plaintiff alleged that there was an express contract and that "plaintiff earned under said contract the sum of $7,611.84." *Id.* at 232, 67 N.W.2d at 402. The supreme court ruled that this complaint did not give the defendant notice of a claim for implied promise or for unjust enrichment. *Id.*

In *Folk v. Home Mut. Ins. Co.*, the complaint specifically referred to an insurance policy by its policy number. 336 N.W.2d 265, 267 (Minn.1983). In post-trial submissions, the plaintiffs argued and won on an implied contract theory. *Id.* The supreme court again held that the pleadings did not give the defendant notice of the theory of recovery and reversed the district court. *Id.* at 267–68.

Here, appellant had inadequate notice that respondent sought any affirmative relief and no notice of the far-reaching relief addressed in the district court order. The prayer for relief in the original complaint requested only an order directing Allina to disclose information, or other relief associated with the disclosure or the information, and for "such further relief as the [c]ourt deems necessary."

As with *Roberge* and *Folk*, appellant had no notice of respondent's claims, by way of motion, complaint, or any other pleading. Even the consent decree entered into by the parties fails to outline or give a hint of the sweeping relief granted by the district court. Because appellant did not receive notice of respondent's claims or requested relief, the district court order at issue here is reversed.

## V. Whether disputed, material facts were resolved

■ Summary judgment is only to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact." Minn. R. Civ. P. 56.03. Thus, "on a summary judgment motion a court may not weigh the evidence or make factual determinations." *Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.*, 535 N.W.2d 337, 341 (Minn.1995). The evidence must be viewed in the light most favorable to "the party against whom the motion was granted." *Id.*

■ Appellant moved for summary judgment based on the absence of notice of any other issues, and the district court granted relief as if both parties had moved for summary judgment, even though respondent made no formal motion for affirmative relief. Appellant argues that, in doing so, the district court impermissibly engaged in the weighing of evidence and making credibility determinations. We agree.

In *Smith v. Woodwind Homes, Inc.*, this court was faced with a summary judgment order in which the memorandum included statements that showed the district court weighed the evidence; those statements included, "[t]his explanation certainly makes more sense" than the other party's argument and that one party's scenario was "far more likely" than other explanations. 605 N.W.2d 418, 422–23 (Minn.App. 2000). We concluded "that the findings

impermissibly weigh[ed] disputed facts" because whether to believe facts urged by one side or another is ultimately a question to be decided at trial, not summary judgment. *Id.* at 423.

While respondent asserts that there was no weighing of the evidence, the district court memorandum belies that assertion. Regarding the duration of the appointments and the purpose of the consent order, the district court stated that appellant's position was "not plausible" and that appellant's evidence was "not credible," in light of contrary evidence submitted by respondent. Regarding the election of board members, the district court stated that laches did not apply because it "believe[d], quite frankly, that the A[ttorney] G[eneral] should have [known of], but did not know of or did not realize the import of, the election . . . ." This explicit weighing of the facts is improper in the context of a motion for summary judgment. Accordingly, we reverse.[3]

## DECISION

Because the district court improperly weighed the evidence on a summary judgment motion and because of the absence of appropriate notice of claims at issue, the district court's order is reversed.

**Reversed.**

---

**3.** The Attorney General argues, and the district court assumes, that it has authority to commence a "rehabilitation" of Medica. Appellant does not agree and claims the only statutory authority for rehabilitation of Medica is found in Minn.Stat. § 62D.18 (2004) and that authority is entrusted to the Commissioner of Health, not the Attorney General. We note that neither the complaint nor the consent order even hint at the possibility of a rehabilitation procedure. Whether the Attorney General has the authority he suggests is not properly before this court, and we do not decide it.