Robert **CARLSON**, et al., **Respondents,**

v.

**SALA ARCHITECTS, INC., Appellant.**

No. A06–691.

Court of Appeals of Minnesota.

June 5, 2007.

William M. Hart, Michael D. Hutchens, Damon L. Highly, Meagher & Geer, P.L.L.P., Minneapolis, MN, for appellant.

Keith S. Moheban, Elizabeth C. Kramer, Leonard, Street and Deinard, Minneapolis, MN, for respondents.

Considered and decided by STONEBURNER, Presiding Judge; SHUMAKER, Judge; and CRIPPEN, Judge.*

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to   Minn. Const. art. VI, § 10.

## OPINION

SHUMAKER, Judge.

In this dispute between architects and their clients, the respondents claim that they hired the appellant to design a particular style home for them, that they paid approximately $292,000 for the appellant's architectural services, and that the appellant failed to properly perform as agreed.

After denying the appellant's motion for summary judgment, the district court, sua sponte, awarded summary judgment to the respondents on the ground that the appellant was professionally negligent in holding out as licensed the unlicensed project architect. The court then ordered "disgorgement" of all fees the respondents paid to the appellant.

The court also granted the respondents' motion to amend their complaint to allege statutory violations relating to the issue of lack of licensure and later denied the respondents' motion for an award of attorney fees.

On appeal, the appellant challenges only the summary judgment, and, by notice if review, the respondents seek review of the court's denial of their motion for an award of attorney fees.

Because the court erred in determining that there were no genuine fact issues as to professional negligence, we reverse and remand for further proceedings. We also reverse the court's determination that "an architect owes fiduciary duties to its clients" as being an error of law. We affirm the court's denial of the respondents' motion for an award of attorney fees.

## FACTS

In August 2000, respondents Robert Carlson and Virginia Carlson hired appellant SALA Architects, Inc. to design for them a single-family home in Eden Prairie,

and the parties signed a "standard form agreement" for the project.

The Carlsons were drawn to SALA, and in particular architect Dale Mulfinger, because these architects were known for their expertise in the design of the "cottage" style home the Carlsons wanted. The Carlsons specifically did not want a contemporary or modern style.

After the parties entered the agreement, SALA assigned architect David Wagner, a new employee, to assist with the project. Although Wagner was an experienced architect who had worked for a west-coast architectural firm, he was not licensed as an architect in Minnesota. The Carlsons contend that Wagner's expertise and interest were in modern-style homes typical of northern California architecture, a style of home they expressly rejected from the outset.

The Carlsons contend that they believed that Mulfinger would play a significant and active supervisory role in the project but that in actuality his services were tangential, and he only supervised from a distance. They contend that it was Wagner who assumed the principal role in and control of the project and that, at all times, SALA held him out to be a qualified architect.

By September 2001, after numerous meetings between SALA and the Carlsons, and after various revisions of the design plans, the Carlsons concluded that SALA was not complying with the agreement to design the style of house they wanted, and they stopped the project. They later terminated SALA altogether, and, by that time, they had paid nearly $292,000 in fees for SALA's architectural services.

In 2004, the Carlsons sued SALA on theories of breach of contract and professional negligence and sought the return of the sums they had paid. When SALA

moved for summary judgment, the Carlsons moved to amend their complaint to add statutory claims relating to Wagner's lack of Minnesota licensure.

The district court denied SALA's motion, ruling that genuine issues of material fact existed, but, sua sponte, awarded summary judgment to the Carlsons. The court ruled that it was undisputed that Wagner was not a licensed architect and that SALA never informed the Carlsons of this fact but rather held Wagner out as a qualified architect. Accordingly, the court ruled as a matter of law that SALA had committed professional negligence. The court then held that, because SALA owed a fiduciary duty to the Carlsons, and breached that duty, the Carlsons were entitled to a return of the fees they had paid. These rulings are challenged on appeal.

The court also granted the Carlsons' motion to amend their complaint. That ruling is not challenged. And the court denied the Carlsons' motion for an award of attorney fees. The Carlsons seek review and reversal of that ruling.

## ISSUES

1. Was summary judgment properly granted when competent evidence was in conflict as to whether an architectural firm held out an unlicensed architect to be a qualified Minnesota architect?

2. Does a per se fiduciary relationship exist between an architect and client?

3. Did the respondents, who were awarded summary judgment, become entitled to attorney fees when they failed to present evidence as to the connection of the fees to the litigation and the reasonableness of those fees?

## ANALYSIS

SALA's appeal invites us to determine whether the district court erred in award-ing summary judgment to the Carlsons because the court concluded that (1) there is no genuine factual dispute as to whether SALA held out an unlicensed architect to be licensed, and (2) a fiduciary duty exists between an architect and client, which duty was breached in this case.

On an appeal from summary judgment, this court must decide "(1) whether there are any genuine issues of material fact and (2) whether the [district] court erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). No genuine fact issue for trial exists if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (quotation omitted). "A party need not show substantial evidence to withstand summary judgment. Instead, summary judgment is inappropriate if the nonmoving party ... presents sufficient evidence to permit reasonable persons to draw different conclusions." *Schroeder v. St. Louis County,* 708 N.W.2d 497, 507 (Minn.2006) (emphasis omitted). In deciding a summary-judgment motion, the district court "may not weigh the evidence or make factual determinations, but is required to view the evidence in the light most favorable to the nonmoving party." *Teffeteller v. Univ. of Minn.,* 645 N.W.2d 420, 432 (Minn.2002). Nor is it appropriate for the district court to assess, evaluate, or determine credibility of the evidence. *State ex rel. Hatch v. Allina Health Sys.,* 679 N.W.2d 400, 406 (Minn.App.2004).

*"Holding Out" An Unlicensed Architect*

■ The district court entered two orders respecting the summary judgment awarded to the Carlsons. The first, dated August 30, 2005, awarded the judgment, and the second, dated October 27, 2005, granted SALA's motion for reconsideration but ordered that its previous

summary-judgment ruling would remain unchanged. To each order, the court attached a memorandum. Together these memoranda provide the district court's analysis of the issues upon which summary judgment was based.

In its second memorandum, the court referred to its first order as having been based on a finding that there was "no material factual dispute on the issue of professional negligence," and that it contained the conclusion that SALA "was professionally negligent for holding out David Wagner as a licensed architect" to the Carlsons.

There is no dispute that David Wagner was not a licensed architect in Minnesota. But SALA disputes the court's conclusion that SALA held Wagner out as a licensed architect and supports its position with invoices sent to the Carlsons, which list Wagner only as a "draftsperson," and with affidavits by Mulfinger and Wagner. Mulfinger swore that SALA does not allow unlicensed employees to hold themselves out as architects, that SALA invoices identified Mulfinger as "project manager and principal architect," that Wagner was identified as a draftsperson, and that it was apparent from the invoices that Wagner's time was billed, not as an architect, but as a draftsperson. In his own affidavit, Wagner swore that he never held himself out as an architect and that SALA listed him as a draftsperson on invoices which the Carlsons received and paid.

The court acknowledged SALA's evidence but ruled that "a trier of fact could not reasonably conclude that [SALA] did not hold out Wagner as a licensed architect to [the Carlsons] in the course of the parties' professional dealings." In support of the court's ruling, the Carlsons point to a list of "contact" persons having involvement in the project. Under "Architects," SALA is listed, and then Mulfinger and Wagner are listed. SALA argues that this "contact" list identified persons who could be contacted regarding various architectural services and that Wagner was a person who could be contacted regarding services performed and to be performed by the clearly disclosed architect hired for the project, namely, SALA itself. The Carlsons also note that not all invoices identified Wagner as a draftsperson. Some invoices clearly show Wagner listed as a draftsperson and show his billing rate. Other invoices are more general and list Wagner, along with other non-architects, under a category of "Architectural Services." SALA argues that the more general invoices merely show a number of individuals, architects and non-architects, involved in performing work under the heading of architectural services, and the only "holding out" was the fact that these listed persons did contribute in one way or another to the project and, in a broad sense, provided architectural services. Perhaps it is a digression at this point, but it must be noted that it has not been argued, nor did the court hold, that it is improper, illegal, negligent, unprofessional, or in violation of contract for an architect, duty bound to perform "architectural services" for a client, to employ or rely on non-architects to assist with the provision of those services.

Additional bases for the court's conclusion that a holding out occurred are Robert Carlson's affidavit, in which he states that Wagner was listed as the "project architect" and that he did not learn of his lack of licensure until after the lawsuit was started; and a document that appears to be part of the plans for the project (identified as Mulfinger Exhibit # 3), which shows Wagner as one of the "contacts" for the architect, but also lists the "Project Architect" as "DM," presumably Dale Mulfinger.

In its memorandum, the court clearly made factual determinations and drew conclusions. It is apparent that the court believed Robert Carlson's statement that he was not aware of distinctions among titles of persons listed on the invoices. Inferentially, Robert Carlson was entitled to ignore the disclosure of Wagner as a draftsperson and instead rely on the listing of him as a contact person for the architect. If that is a proper inference, it is one for the jury, and not the court on summary judgment, to draw.

The court also notes that the project blueprint lists both Wagner and Mulfinger under "Architect," with Wagner being listed first, and that the blueprint, being a public document, would have more significance in terms of accuracy than a private document. That is a conclusion a jury could possibly draw, but it depends on inference and argument and is not a proper determination on summary judgment.

Reviewing the documentary evidence submitted on summary judgment, the court indicated that the affidavits of Mulfinger and Wagner "fail to support a reasonable conclusion" contrary to the conclusion that SALA held Wagner out as a licensed architect. It appears that the court has gone beyond merely ascertaining the existence or nonexistence of a genuine fact issue and has imposed upon SALA a burden of "proof" not required at this stage of the proceeding.

On the issue of "holding out," there is a conflict in the evidence that can be resolved only through assessing credibility and weight. The court engaged in that assessment, finding that SALA's position was not reasonable. To reach that conclusion, the court necessarily had to reject as untrue SALA's evidence that no one held Wagner out as an architect but disclosed his status as a draftsperson and as one who both performed architectural services

and could be contacted on behalf of the architect. The court necessarily had to give more weight to the "contacts" list than to the invoices, and had to give weight to one part of the plan or blueprint showing Wagner as listed under "Architect" but had to reject the specific designation of "DM" as the "Project Architect."

In selecting certain evidence over conflicting countervailing evidence; in ruling that SALA's countervailing evidence was either not believable or not reasonable; and in giving more weight to some evidence than other evidence, the court usurped the precise functions reserved to the jury under our system of jurisprudence. The lesson of *Donnay v. Boulware* is particularly apt here:

> Summary judgment is a "blunt instrument" and should not be employed to determine issues which suggest that questions be answered before the rights of the parties can be fairly passed upon. It should be employed only where it is perfectly clear that no issue of fact is involved, and that it is not desirable nor necessary to inquire into facts which might clarify the application of the law.

275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966).

There are genuine questions of fact on the issue of "holding out," and, as the court's summary-judgment memorandum demonstrates, there are many issues of credibility and weight as to the case in general. Thus, the district court erred in determining that there is no genuine issue of material fact as to whether SALA held Wagner out to be a licensed architect on the Carlsons' project, and the summary judgment must be reversed and the case remanded for trial.

*Fiduciary Duty*

██ The district court not only found that there was no fact issue as to "holding

out" but also concluded that, by holding out an unlicensed person to be a licensed architect, SALA breached its fiduciary duty to its clients. SALA argues that the court erred as a matter of law, contending that there is no fiduciary duty per se between architect and client. We agree and reverse that determination as well.

We note as a preliminary matter that the court relied substantially on the affidavit of Anthony Desnick, an architect, in deciding the issue of the breach of fiduciary duty.

In a sweeping mélange of ostensibly proper expert opinion, improper opinion, speculation, legal conclusions, statutory interpretation, and clearly partisan polemics, Desnick purports to resolve the entire case. He sets the legal standards for the issues, evaluates and judges the facts, determines credibility, decides what law is to apply and how it is to be applied, calculates damages, and decides causation. He resolves both the breach-of-contract claim—opining, in an ultimate legal conclusion, that SALA breached its contract with the Carlsons—and the professional-negligence claim—in essence stating the dubious proposition that an architect must do what the client wants or the architect is per se guilty of malpractice. Like the district court, we are not to weigh evidence, but the paucity of reliability in this unabashedly biased expert opinion is so striking that, as in the district court's suggestion about SALA's "holding out" evidence, no reasonable trier of fact could be persuaded by any part of it. Nevertheless, the credibility and weight of expert evidence is reserved for jury determination, if such evidence becomes relevant at trial.

The court here relied on the expert affidavit and certain statutes in concluding that SALA breached a fiduciary duty by holding Wagner out as a licensed architect.

The court noted that Minn.Stat. § 326.02, subd. 1 (2004), makes it unlawful for a person to practice architecture or to hold himself out as an architect unless he has the requisite license or certification. But Minn.Stat. § 326.14 (2004) permits unlicensed persons to engage in architectural work as long as a licensed architect takes "responsible charge of such work...." Minn.Stat. § 326.14. SALA contends that Mulfinger, a licensed architect, was the project architect who took responsible charge of the work for which the Carlsons retained the firm. There is testimonial and documentary support of SALA's contention that is sufficient to create a genuine fact issue for trial. As discussed above, the court concluded that a "holding out" occurred, and the court similarly concluded that Mulfinger did not assume responsible charge of the project and thus there was a statutory violation.

In granting the remedy of disgorgement of fees that SALA received for the project, the court assumed, without authority, that a fiduciary relationship exists between architect and client. Although *Rice v. Perl*, 320 N.W.2d 407 (Minn.1982), provides authority that a remedy for the breach of a fiduciary relationship can be the return of fees paid by the client to the professional, the sine qua non of that remedy is the existence of a fiduciary relationship. *Perl* involved an attorney-client relationship, and the professional relationship between a lawyer and his client is indisputably fiduciary. *Perl*, 320 N.W.2d at 411. But no Minnesota court has held that a fiduciary relationship exists per se between an architect and his client.

A fiduciary relationship is characterized by a "fiduciary" who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence. *Toombs v. Daniels*, 361 N.W.2d 801, 809

(Minn.1985); *Vacinek v. First Nat'l Bank,* 416 N.W.2d 795, 799 (Minn.App.1987). Such a relationship transcends the ordinary business relationship which, if it involves reliance on a professional, surely involves a certain degree of trust and a duty of good faith and yet is not classified as "fiduciary." Minnesota has declined to classify even the physician-patient relationship as fiduciary. *D.A.B. v. Brown,* 570 N.W.2d 168, 171 (Minn.App.1997). Thus, absent binding authority to the contrary, and none has been shown here, we hold that the relationship of architect and client is not a fiduciary one. However, whether a fiduciary relationship exists is a fact question. *Toombs,* 361 N.W.2d at 809. Thus, while a relationship might not be fiduciary per se, the facts of the case might create such a relationship. Whether the facts here gave rise to a fiduciary relationship between SALA and the Carlsons is not an issue for resolution by summary judgment, but no such relationship existed per se, and the district court erred in assuming the contrary. The court's ruling that SALA breached its fiduciary duty to the Carlsons must be reversed.

SALA argues that this is a breach-of-contract case and nothing more. Recognizing that SALA's services ended at the design phase, that seems to be correct. All of the duties imposed on SALA were contractual. If SALA intentionally or negligently failed to perform those duties, it will have breached the contract. Or if SALA failed, for whatever unjustifiable reason, to carry out the terms of the contract, it will have breached the contract. But a true negligence claim would seem to have to relate to a stage beyond the design phase, likely the building phase. On remand, the district court and the parties may consider whether there exists a viable negligence claim, apart from breach of contract, for trial.

*Attorney Fees*

■ The district court awarded summary judgment to the Carlsons together with "fees and costs to be taxed." The Carlsons moved for an award of attorney fees in the sum of $90,961.25, basing their motion on a provision in the parties' agreement that SALA would indemnify the Carlsons for attorney fees incurred "in connection with [SALA's] negligent errors, omission or acts."

The court denied the motion on the ground that the Carlsons "did not make a motion for attorney fees, and did not submit any facts to support an award of attorney fees, at the summary judgment stage of this litigation."

■ Through their notice of review, the Carlsons argue that they are entitled to attorney fees because the court found SALA to have been negligent and to have breached its fiduciary duty. In view of our reversal of those liability determinations, the argument is without merit at this point. Moreover, the court found that the Carlsons had failed to produce facts to support their fee request. We will not reverse the district court's decision on attorney fees absent an abuse of discretion. *Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn.1987). Even when attorney fees may be allowed, there still must be a showing as to their reasonableness and their connection to the litigation. *See State by Head v. Paulson,* 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971) (stating that what constitutes reasonable value of attorney fees is determined by the evidence submitted and the facts in the record). The Carlsons have made no such showing, nor have they cited any facts in the record to support their request for fees. They presented to the district court nothing more than a *claim* for fees, but without substantiation. Thus, the court did not abuse its discretion in denying the

motion for attorney fees, and we affirm that denial.

## DECISION

No per se fiduciary duty exists in Minnesota, and whether the facts of this case created such a relationship was not an issue for the district court to resolve by summary judgment. Although there is no dispute that Wagner was not a licensed architect in Minnesota, the district court made factual determinations and drew conclusions that are improper on summary judgment. The district court erroneously determined that SALA held Wagner out as a licensed architect, that a per se fiduciary duty exists between architect and client, and that SALA had breached this duty. Therefore, summary judgment must be reversed and the case remanded for trial.

The court also denied respondents' motion for attorney fees. Because respondents did not provide the requisite support for its fee request, the court did not err in this ruling.

**Affirmed in part, reversed in part, and remanded.**